UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X    :

Stephanie Marie Cruz Roman,                      :
                                                                        :
                        Plaintiff,                       :
                                                                        :
            -against-                                       :
                                                                        :
Commissioner of Social Security,              :
                                                                        :
                        Defendant.                    :    :
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/25/2022
```

OPINION

20-CV-6907 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Stephanie Marie Cruz Roman ("Plaintiff")[1], represented by counsel, commenced

this action against Defendant, Commissioner of the Social Security Administration (the

"Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff

seeks review of the Commissioner's decision that he was not disabled from October 22, 2008,

the onset date of his alleged disability, through the date of the decision, August 27, 2019.

For the reasons set forth below, the Court GRANTS Plaintiff's motion and DENIES the

Commissioner's motion for judgment on the pleadings.

**BACKGROUND**

Plaintiff was born in 1996 in Puerto Rico and moved to New York in 2009.  Plaintiff

graduated from high school with a special education diploma and completed job training as

part of his special education program.  Plaintiff suffers from attention deficit hyperactivity

disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), bipolar disorder, panic attacks,

---

[1] Plaintiff is transgender and uses male pronouns.

anxiety, depression, memory loss, obesity, degenerative disc disorder of the lumbar spine, heel spurs, and diabetes.

### 1. *Procedural History*

On April 13, 2017, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits alleging disability due to the aforementioned physical and mental health impairments. (A.R. 12.)  Plaintiff's claims were denied after initial review on July 6, 2017.  (A.R. 10.)  At Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Michael McKenna was held on June 26, 2019 via videoconference.  (*Id.*)  Plaintiff appeared with counsel and testified at the hearing.  (*Id.*)  Vocational Expert ("VE") Richard Hall also testified.  (*Id.*)  On August 27, 2019, ALJ McKenna denied Plaintiff's application.  (A.R. 7.)  Plaintiff appealed, and on June 29, 2020, the Appeals Council affirmed the decision of the ALJ.  (A.R. 1.)

Plaintiff commenced this action on August 26, 2020, asserting that: (1) the ALJ erred in finding Plaintiff's diabetes and heel spur non-severe impairments; (2) the ALJ failed to properly evaluate the medical opinion evidence; (3) the ALJ erred in finding Plaintiff did not meet the Listings related to his mental impairments; (4) the ALJ's Residual Functional Capacity ("RFC") finding was not supported by substantial evidence; and (5) the ALJ erred in relying on the VE's testimony in finding Plaintiff was not disabled.  (ECF Nos. 1, 16.)

### 2. *Summary of Relevant Medical Evidence*

#### A. *Physical Impairments*

On September 15, 2016, Nurse Practitioner ("NP") Elizabeth Holt treated Plaintiff for his diabetes where he reported impaired memory, bilateral heel pain, and left foot pain.  (A.R. 347-

351.)  Plaintiff also was referred to podiatry for spurs.  (A.R. 354).  NP Holt noted that Plaintiff's

diabetes had "been managed with diet and oral medication" and that Plaintiff denied blurred

vision, burning of extremities, and frequent urination.  (A.R. 347.)  At a follow-up visit the next

month in October 2016, Plaintiff reported back pain.  (A.R. 357.)  Treatment notes reflect

Plaintiff suffered from uncontrolled diabetes, causing frequent urination, which led NP Holt to

increase his dosage of metformin.  (*Id.*)  At Plaintiff's December 2016 appointment, Plaintiff

complained of left foot pain that was worse when walking and low back pain that increased

with movement.  (A.R. 359.)  NP Holt noted extremity numbness, joint pain, swelling, and

muscle weakness.  (A.R. 361.)  NP Holt diagnosed Plaintiff with "chronic left-sided low back pain

with left-sided sciatica" and referred him to pain management and ophthalmology.  (A.R. 362-

63.)

In February 2017, NP Holt prescribed a back brace and gabapentin for Plaintiff's back

pain.  (A.R. 262.)  Plaintiff also reported frequent urination and polydipsia, and a physical exam

was normal.[2]  (A.R. 371-73.)  On April 13, 2017, Plaintiff complained of memory issues,

disorientation, difficulty concentrating, and that his diabetes caused blurred vision, diarrhea,

heartburn, increased fatigue, and polydipsia.  (A.R. 395.)  NP Holt prescribed Plaintiff

medication for his diarrhea.  (A.R. 399.)  In June 2017, Plaintiff saw NP Holt and complained of

pain in both feet and diabetes symptoms of blurred vision, diarrhea, heartburn, increased

fatigue, polydipsia, and weight gain.  (A.R. 597.)  A physical exam was normal, and NP Holt

assessed him with uncontrolled type 2 diabetes without complication and cervicalgia.  (A.R.

---

[2] Polydipsia is excessive thirst caused by a medical condition such as diabetes.

600-01.)  In August 2017, Plaintiff complained of migraines and diabetes with blurred vision, burning in his extremities, frequent urination, polydipsia, and weight gain.  (A.R. 605.)  An exam was normal, and NP Holt assessed him with controlled type 2 diabetes, memory loss, chronic low back pain, and migraines.  (A.R. 609-10.)  In September 2017, lab work showed high HgA1c, but Plaintiff denied blurred vision, burning of extremities, diarrhea, frequent urination, increased fatigue, and polydipsia.  (A.R. 619.)  His physical exam was normal, and he was assessed with controlled type 2 diabetes that was "improved."  (A.R. 621-22.)

On January 31, 2017, NP Carline Lamour-Occean treated Plaintiff for moderate-severe back pain with numbness and paresthesia, radiating to both legs, where Plaintiff rated his pain level a seven out of ten.  (A.R. 365-66.)  About a month later, Plaintiff reported his pain to be a nine out of ten.  (A.R. 381.)  An MRI showed straightening of the lumbar spine.  (A.R. 382.)  NP Lamour-Occean prescribed physical therapy, a knee brace, back stabilizer, and oral medication.  (A.R. 382.)  NP Lamour-Occean provided a report in March 2017 indicating Plaintiff had moderate to severe symptoms of lumbar spine pain that was aggravated by daily activities and descending stairs.  (A.R. 272.)  On March 30, 2017, Plaintiff rated his pain as a seven out of ten, but NP Lamour-Occean noted that Plaintiff was able to "heel-and-toe-walk normally," motion is without pain, Plaintiff did not have back or leg pain, and his symptoms were well controlled with medication.  (A.R. 389.)  On July 20, 2017, NP Lamour-Occean submitted a medical source statement opining that Plaintiff's pain was severe enough to interfere with his attention and concentration.  (A.R. 487-88.)  NP Lamour-Occean also noted that the side effects of Plaintiff's medication included drowsiness and sleepiness.  (A.R. 488.)  NP Lamour-Occean opined that

Plaintiff could sit continuously for one hour and cumulatively for two, stand or walk for one hour continuously and three hours cumulatively, and had to elevate both legs when sitting. (A.R. 487-89.)  NP Lamour-Occean concluded that Plaintiff would miss more than three workdays a month.  (A.R. 492.)

On February 13, 2017, Dr. Gary Cicio, a podiatrist, examined Plaintiff for his feet pain and noted he suffers from post-static dyskinesia (involuntary muscle movements).  (A.R. 376.) Plaintiff also had a calcaneal spur.  (A.R. 378.)  Dr. Cicio discussed weight loss, orthotics, steroid injections, and surgery with Plaintiff.  He noted that Plaintiff had difficulty walking and diagnosed him with bursitis of the right foot.  (*Id.*)

On June 7, 2017, Plaintiff was evaluated by consultative examiner Dr. John Fkiaras.  (A.R. 472.)  Plaintiff reported a seven out of ten level of low back pain that radiated to his lower extremities, and ten out of ten in both knees and foot pain.  (A.R. 471.)  However, an exam showed that Plaintiff appeared to be in no acute distress but had difficulty walking on his heels and toes and could squat halfway.  (A.R. 473.)  Dr. Fkiaras concluded that Plaintiff's prognosis was fair but that he should avoid smoke, dust, and respiratory irritants.  (A.R. 474.)

On July 13, 2017, Dr. Ferdinand Ruiz submitted a medical source statement noting that Plaintiff had a left heel spur with tenderness and swelling and opined that Plaintiff could not continuously sit, stand, or walk for more than 15 minutes.  (A.R. 480-82.)  Dr. Ruiz also opined that Plaintiff's experience of pain would seldom interfere with his attention and concentration. (*Id.*)  Dr. Ruiz referred Plaintiff to be evaluated for surgery.  (A.R. 486.)  Of note, Dr. Ruiz's treatment records and notes are not included in the administrative record.

On March 25, 2019, Dr. Antony Jeganathan examined Plaintiff and concluded he had a reduced range of motion, but that Plaintiff was in no acute distress.  (A.R. 627.)  Specifically, he found that Plaintiff's lumbar extension, flexion, and lateral bending were all below normal levels.  (A.R. 626.)  Plaintiff also had a positive Spurling sign.  (A.R. 627.)  In May 2019, Plaintiff reported his pain being a three out of ten.  MRIs showed that Plaintiff had degenerative disc desiccation and central disc protrusion, among other complications.  (A.R. 630, 635-37.)  Plaintiff was referred to physical therapy.  (A.R. 631.)

On June 21, 2019, Family Nurse Practitioner ("FNP") Debra Rivera-Oquendo, Plaintiff's primary care provider beginning in March 2016, submitted a medical source statement indicating that Plaintiff had severe pain aggravated by daily activities such as descending stairs.  Also, she noted his medication caused drowsiness and sleepiness, and his pain was severe enough to affect his attention and concentration.  (A.R. 235-40.)  FNP Rivera-Oquendo also noted that Plaintiff could sit for one hour continuously and two hours total in an eight-hour workday, needed to elevate his legs, and could stand or walk for one hour continuously and three hours in total.  (*Id.*)  FNP Rivera-Oquendo opined that Plaintiff would miss more than three days of work a month.  (*Id.*)  Of note, FNP Rivera-Oquendo's treatment records and notes are not included in the administrative record.

*B. Mental Impairments*

On April 4, 2016, Maya Fukuda,[3] a provider at La Casa De Salud, noted that Plaintiff completed one semester at community college before dropping out due to his learning

---

[3] The record does not indicate Maya Fakuda's title or her role at La Casa De Salud.

6

difficulties.  (A.R. 316.)  Fakuda indicated that Plaintiff was pleasant, cooperative, well related, and well-groomed with depressed mood and appropriate affect.  (A.R. 317.)  His symptoms were associated with major depressive disorder (recurrent, moderate).  (*Id.*)  Plaintiff's stressors included searching for a job and confusion regarding his gender identity.  (*Id.*)  Fakuda concluded Plaintiff would benefit from psychotherapy to identify coping skills to improve mood, behavior, and functioning.  Similar notes were also documented at Plaintiff's May 11, 2016 visit.  (A.R. 322.)

On May 26, 2016, NP Claudia Nicol Melendez, conducted a psychiatric diagnostic evaluation of Plaintiff.  (A.R. 263.)  Plaintiff's chief complaint was depression and anxiety.  (A.R. 265.)  Plaintiff also reported suicidal ideations and visual hallucinations.  (A.R. 265.)  NP Melendez concluded by noting that Plaintiff is "pleasant, cooperative, well related, and well-groomed with depressed and anxious mood and appropriate affect.  [Plaintiff] is oriented x3 and has no evidence of delusion, hallucinations, or suicidal ideation.  [Plaintiff's] history and narrative presents symptoms associated with Major Depressive [disorder,] Rule out Bipolar [, and] PTSD chronic." (A.R. 266)

On February 1, 2017, NP Edith Williams, noted Plaintiff was last seen in June 2016 with NP Melendez and that Plaintiff was not able to keep appointments due to work.  (A.R. 368.)  Plaintiff reported feeling depressed, unable to sleep, and auditory and visual hallucinations.  (*Id.*)  Plaintiff stated he stopped taking his psychiatric medications because they would make him have suicidal thoughts.  (*Id.*)  Plaintiff was prescribed Lexapro to assist with his depression.  On February 24, 2017, Plaintiff reported having an "ok" mood but continued to have mood

instability with anger and depression.  (A.R. 384.)  After complaining about Lexapro's

effectiveness, Plaintiff was switched to Latuda.  (*Id.*)  On May 1, 2017, Plaintiff returned and

stated he was unable to have his Latuda prescription filled due to his insurance but was feeling

okay.  Plaintiff also began to cut his wrist and finger due to stress, which NP Williams noted as

superficial.  Plaintiff was prescribed Gedeon in place of Latuda which his insurance would cover.

(A.R. 402.)  Later in May, Plaintiff was hospitalized for attempting suicide as a result of not

taking his medication regularly.  (A.R. 43.)

On May 8, 2017, NP Neda Behrouzi submitted a medical source statement stating that

she began seeing Plaintiff in May 2017 and Plaintiff suffered from PTSD and major depressive

disorder with psychosis.  (A.R. 455.)  NP Behrouzi noted that Plaintiff suffers from poor

memory, sleep disturbance, mood disturbance, emotional lability, delusions, recurrent panic

attacks, paranoia, feelings of guilt, difficulty thinking or concentrating, suicidal ideations, social

withdrawal, intrusive recollections, generalized persistent anxiety, and irritability.  (*Id.*)  NP

Behrouzi also noted that his medications caused side effects including dizziness and

drowsiness.  (A.R. 456.)  NP Behrouzi concluded that Plaintiff had an extreme loss to engage in

semi-skilled or skilled work, a marked loss in the ability to maintain concentration, maintain

regular attendance and punctuality, sustain ordinary routines, perform at a consistent pace,

accept instructions from supervisors, and respond appropriately to changes in the workplace.

(A.R. 457.)  NP Behrouzi also noted that Plaintiff had a moderate loss of ability to remember

locations, understand and carry out simple instructions, and travel to unfamiliar places.  (*Id.*)

NP Behrouzi noted that Plaintiff had marked loss in maintaining social functioning, frequent

deficiencies of concentration, persistence, and pace.  (A.R. 458.)  Lastly, NP Behrouzi concluded

that Plaintiff would miss more than three workdays in a month.  (A.R. 456.)

On June 7, 2017, Plaintiff was evaluated by consultative examiner Dr. Seth Sebold, a

psychologist.  Plaintiff reported he suffered from depression, anxiety, suicidal thoughts,

hallucinations, and memory deficits.  (A.R. 465.)  Plaintiff also made errors in simple

subtractions and serial twos.  (A.R. 467.)  Plaintiff had normal motor behavior, posture, and eye

contact, fluent speech, adequate expressive and receptive language, coherent and goal

directed thought processes, full affect, neutral mood, mildly impaired attention, concentration,

and memory, below average intellectual functioning, and good insight and judgment.  (A.R.

467.)  Dr. Sebold concluded that Plaintiff had moderate limitations in interacting with

supervisors, regulating emotions, and maintain well-being.  (A.R 468.)  Finally, Dr. Sebold

opined that Plaintiff's psychiatric conditions may significantly interfere with his ability to focus

on a daily basis.  (*Id.*)

On July 5, 2017, Dr. T. Harding, a reviewing psychologist, concluded that Plaintiff had

mild limitations in his ability to understand, remember, or apply information and moderate

limitations in interacting with others, concentrating and maintaining pace, and adapting or

managing oneself.  (A.R. 72.)

###   3.   *Administrative Hearing*

At the administrative hearing, Plaintiff testified that he was sexually abused as a child

while living in Puerto Rico and suffered from anxiety, PTSD, depression, and memory loss.  (A.R.

40, 45.)  Plaintiff had auditory hallucinations and nightmares.  (A.R. 44-46.)  Plaintiff's anxiety

made it hard for him to be in public.  (A.R. 47.)  Plaintiff attempted to commit suicide in May

2017, which led to his hospitalization.  (A.R. 43.)  Plaintiff's medications mostly controlled his

suicidal ideations.  (A.R. 44.)  Plaintiff did not shower every day and needs reminders to take his

medications.  (A.R. 52-54.)  Plaintiff's medication caused side effects including memory loss,

dizziness, drowsiness, and nausea.  (*Id.*)  ALJ McKenna asked Plaintiff what, if anything, is

preventing him from working on a full-time basis.  Plaintiff responded, "mostly my mental."

(A.R. 56.)

      Plaintiff also testified that he could not remember ever having a job. The ALJ stated that

he would find that Plaintiff did not have past relevant work.  (A.R. 42-43.)  Plaintiff once

attended a job training, but often forgot instructions from his supervisor and had to request

that they be repeated.  (*Id.*)  As a result, Plaintiff suffered panic attacks that caused him to cry

uncontrollably in the bathroom.  (A.R. 46.)  Plaintiff also wore dark glasses as a coping

mechanism.  (A.R. 47.)

      As to his physical impairments, Plaintiff testified that he had back pain which made it

difficult to do any chores, spent a lot of time lying down, and could walk only a few blocks

before needing to take a break.  (A.R. 49-50.)  At the time of the hearing, Plaintiff rated his pain

level as a six or seven out of ten.  (A.R. 48.)  Plaintiff also testified that he would often alternate

from sitting and standing when the pain was immense.  (A.R. 48-49.)

      VE, Richard Hall, also testified at the hearing.  ALJ McKenna provided VE Hall a

hypothetical RFC for an individual to perform light work that required standing, walking, and

sitting six hours, frequently climbing ramps and stairs but never ladders, ropes or scaffolds,

occasional crouching, and avoiding dust and other respiratory irritants, requiring simple routine

tasks with minimal interaction with supervisors and co-workers.  (A.R. 58.)  VE Hall testified that

an individual with those limitations may be able to work as a retail marker, office helper, or

mail sorter.  (A.R. 59.)  Additionally, the VE testified that being absent more than two times a

month or being off task 15% of the time would preclude all work.  (*Id.*)  ALJ McKenna then

asked if there were jobs available for a similar individual but who also had to raise their legs

during the workday.  (A.R. 59-60.)  VE Hall testified that having to raise legs while sitting for 15

minutes at a time several times a day would preclude light work.  (*Id.*)

### 4.  *The Commissioner's Decision*

ALJ McKenna found that Plaintiff had not engaged in substantial gainful activity since

the date of his application and has the following severe impairments: Major Depressive

Disorder, PTSD, bipolar disorder, obesity, and degenerative disc disease of the lumbar spine.

(A.R. 12.)  He also found that Plaintiff's diabetes, eczema, left calcaneal heel spur, and learning

disabilities were not severe.  (*Id.*)  As to Plaintiff's diabetes, citing only to NP Holt's treatment

records from May 2016, ALJ Martin found that it was managed with "diet and medication

without complications" and would not "cause more than a minimal limitation in [Plaintiff's]

ability to perform basic work activities."  (A.R. 12-13.)  ALJ McKenna also noted that "the overall

evidence of record supports a finding that any other condition, not specifically mentioned in

this decision . . . is not considered severe."  (A.R. 13-14.)  Next, ALJ Martin found that Plaintiff's

impairments do not separately or in combination meet or equal the listed impairments in the

applicable sections of the Code of Federal Regulations.  (*Id.*)  ALJ McKenna found Plaintiff only

suffered mild or moderate limitations in the relevant functional areas.  (*Id.*)

ALJ McKenna found that Plaintiff had severe medical impairments but that he retained

the residual functional capacity ("RFC") to perform light exertional work with additional

postural and environmental restrictions and to perform simple, routine tasks that involved no

more than occasional interaction with coworkers or supervisors and only incidental contact

with the public.  (A.R. 15.)  ALJ McKenna notes that he "considered all symptoms and the extent

to which [they] can reasonably be accepted as consistent with the objective medical evidence

and other evidence, based on the requirements of 20 CFR § 416.929 and SSR 16-3p."  (*Id.*)

Based on the testimony of a vocational expert, the ALJ found that this RFC enabled Plaintiff to

perform the three unskilled, light jobs of retail marker, office helper, and mail sorter.  (A.R. 23.)

## DISCUSSION

### 1.  *Standard of Review*

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the

record and were based on a correct legal standard."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir.

2013) (per curiam) (citing *Burgess v.Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); see also 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive[.]"); *id*. § 1383(c)(3) ("The final determination of the

Commissioner of Social Security . . . shall be subject to judicial review as provided in section

405(g)[.]").

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (citation and internal quotation marks omitted).

In its review of this Claim, the Court also applies the frequently reiterated standards for entitlement to Social Security disability benefits, examination of the procedures employed and development of the record, evaluation of the medical and vocational evidence, and the evaluation of mental impairments as amended by the new regulations in 2017.  These standards, along with numerous authorities and citations, are discussed at length, merely by way of example, in *Vellone v. Saul*, 2021 WL 319354, at *1 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom., Vellone on behalf of Vellone v. Saul,* 2021 WL 2801138 (S.D.N.Y. July 6, 2021), which discussions are hereby incorporated by reference.

### 2. Analysis

As a threshold matter, the "court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v. Astrue,* 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).  In this case, after a careful review, the Court finds ALJ McKenna's development of the record satisfactory.  As

further discussed below, the Court finds that (1) the ALJ failed to properly evaluate the medical opinion evidence; and (2) the ALJ's RFC finding was not supported by substantial evidence. Each are discussed in turn below.

ALJ McKenna failed to properly evaluate the medical opinions of Plaintiff's treating provider NP Holt. Although the treating physician rule has been abrogated, "the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), r*eport and recommendation adopted sub nom*, *Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). Thus, the ALJ must assess the supportability and consistency of medical opinions. *Id.* Here, NP Holt's records indicate on multiple occasions Plaintiff complained of side effects caused by his diabetes which included blurry vision, frequent urination, polydipsia, and burning of the extremities. In every treatment record post February 2017, except for one, Plaintiff complained of these and other complications. Nonetheless, in finding that Plaintiff's diabetes was well managed, ALJ McKenna cites to an earlier treatment record of NP Holt from May 2016, without any mention of the later treatment records which showed complications, which at times noted that Plaintiff's diabetes was controlled and in other instances that it was not. *See Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022) (an ALJ may not cherry-pick particular instances of improvement from treatment notes to create an inconsistency); *see also Vellone*, 2021 WL 319354, at *9 (finding the ALJ "cherry picked treatment notes that supported

14

his RFC determination while ignoring equally, if not more significant evidence in those same records.")

Furthermore, the record does not indicate that any other physician or health professional examined Plaintiff for his diabetic symptoms.  Given that there was no other physician who opined on Plaintiff's diabetes, ALJ McKenna should have engaged in a more substantive discussion that considered the entire treatment record of NP Holt to determine whether Plaintiff's diabetes was indeed severe.  As there is evidence supporting and contradicting ALJ McKenna's finding, a failure to explain his conclusions thwarts this Court's ability to conduct a proper review as required.  *See Sims v. Comm'r of Soc. Sec.*, 2019 WL 421483, at *5 (W.D.N.Y. Feb. 4, 2019).  To clarify, the Court is not suggesting that Plaintiff's diabetes is severe, but that ALJ McKenna should have discussed why Plaintiff's diabetes was not severe given there was contrary evidence indicating the complications identified above.  *See Lim v. Colvin*, 243 F. Supp. 3d 307, 312 (E.D.N.Y. 2017) ("To fulfill [his] burden, the ALJ must adequately explain his reasoning in making the findings on which his ultimate decision rests and must address all pertinent evidence.") (internal quotations and citation omitted).

Nonetheless, even if Plaintiff's diabetes was not severe, ALJ McKenna was required to incorporate the associated limitations in his RFC determination.  *See Ortiz v. Kijakazi*, 2022 WL 706513, at *8 (S.D.N.Y. Jan. 25, 2022), *report and recommendation adopted sub nom, Ortiz v. Comm'r of Soc. Sec.*, 2022 WL 704840 (S.D.N.Y. Mar. 9, 2022) ("Although the Commissioner argues that the ALJ properly determined that the constipation was not a medically determinable impairment, the ALJ was still required to factor this evidence into her RFC

15

determination."). After step three, ALJ McKenna was required to determine Plaintiff's RFC, which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. §§ 404.1520(e)-(f). In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Under SSR 96-8p, an ALJ must consider "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)" in determining a claimant's RFC. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996)

Here, in relevant part, Plaintiff sometimes complained of blurry vision and frequent urination because of his diabetes and complained of dizziness and drowsiness as a side effect to prescribed medications. Of note, the record indicates that four of Plaintiff's healthcare providers (NP Holt, NP Behrouzi, NP Lamour-Occean, and FNP Rivera-Oquendo) noted or found that Plaintiff suffered from these side effects. (A.R. 235-40, 357, 371-73, 456, 488, 597, 602.) In the functional report Plaintiff completed, he also stated, "sometimes I am unable to see because of my diabetes" and side effects from his medication included drowsiness and dizziness. (A.R. 202, 205.) Yet, ALJ McKenna failed to account for these in formulating his RFC. Indeed, Plaintiff also testified his medications made him drowsy and dizzy at the administrative hearing, which ALJ McKenna acknowledged in his decision but again failed to include in his RFC determination. (A.R. 16.) Granted, ALJ McKenna found NPs Behrouzi and Lamour-Occean's

medical statements pertaining to Plaintiff's limitations not persuasive, the same cannot be said to the identified side effects which were also corroborated by the treatment records of NP Lamour-Ocean. *See Decker v. Saul*, 2020 WL 5494369, at *3 (W.D.N.Y. Sept. 11, 2020) ("Although the ALJ is free to choose between properly submitted medical opinions, he may not substitute his own lay opinion for those of medical experts.") (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).  Accordingly, remand is warranted because ALJ McKenna failed to account for Plaintiff's side effects in determining his RFC.  *See Nieves v. Comm'r of Soc. Sec.*, 2022 WL 951107, at *11 (S.D.N.Y. Mar. 30, 2022) (remanding because despite Plaintiff testifying that his "medications caused drowsiness and affected his ability to concentrate, nowhere in the RFC determination did the ALJ address the side effects of Mr. Nieves' medications"); *Kimbrough v. Comm'r of Soc. Sec.*, 2022 WL 956889, at *13 (S.D.N.Y. Mar. 14, 2022), *report and recommendation adopted sub nom*, Kimbrough v. Kijakazi, 2022 WL 953049 (S.D.N.Y. Mar. 29, 2022) (remanding because ALJ failed to evaluate the side effects of Plaintiff's medications in determining RFC where Plaintiff felt sedated); *Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 4462000, at *15 (S.D.N.Y. June 16, 2021), *report and recommendation adopted*, 2021 WL 4461272 (S.D.N.Y. Sept. 29, 2021); *Vinson v. Colvin*, 2015 WL 8482783, at *5 (W.D.N.Y. Dec. 9, 2015) (ALJ erred when he "failed to include in his RFC the side-effects of th[e] medications to which Plaintiff testified [about]"); *Caternolo v. Astrue*, 2013 WL 1819264, at *13 (W.D.N.Y. Apr. 29, 2013) (ALJ erred when he "failed to consider the side effects of Plaintiff's various medications in determining her RFC").

In light of these side effects, ALJ McKenna should have included how often Plaintiff would be off task if he were to engage in substantial gainful activity. VE Hall testified that an off-task rate of 15 % would preclude all work. In *Lopez v. Kijakazi*, the Court remanded the case back to the Commissioner where the ALJ failed to consider whether and how often Plaintiff's impairments would cause him to be off task. 2021 WL 4463288, at *3 (E.D.N.Y. Sept. 29, 2021). There the court noted that looking at the medical evidence and the VE's testimony together, "there is sufficient evidence to raise a legitimate question about whether Plaintiff would remain off-task for what an employer would find to be an unacceptably large percentage of Plaintiff's working hours." *Id.* The same question is raised here. As the record stands and because the ALJ did not address it, it is unclear what amount, if any, Plaintiff would be off task insofar as Plaintiff complains of drowsiness, dizziness, blurry vision, and polyuria. Additionally, VE Hall testified that Plaintiff may be able to work as a retail marker, mail sorter, or office helper. To the extent Plaintiff suffers from blurry vision, depending on its frequency, it is unclear or perhaps unlikely that Plaintiff can be employed in those roles. *See Lim*, 243 F. Supp. 3d at 317 (remanding in part because "the hypotheticals [ ] presented to the vocational expert did not fully account for Plaintiff's mental limitations, particularly the memory loss and "brain fog" caused by her pain medications").

As to Plaintiff's heel spur, the Court finds no error with the ALJ's determination. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted);

18

*see also* 42 U.S.C. § 405(g).  Here, substantial evidence exists to support ALJ McKenna's determination insofar that he evaluated Dr. Ruiz's medical opinion and found it partially persuasive given it was a one-time examination where other healthcare providers concluded that Plaintiff's prognosis was fair despite his foot pain and he could walk with minimal discomfort.  Additionally, although Dr. Cicio, a podiatrist, discussed steroid injections with Plaintiff, he advised Plaintiff "to try [over the counter] orthotics for immediate relief [that is] sturdy and offer arch support."  (A.R. 378.)  Accordingly, ALJ McKenna's decision pertaining to Plaintiff's heel spur and foot pain is supported by substantial evidence.

As to Plaintiff's mental impairments, substantial evidence in the record supported the ALJ's finding that his impairments imposed only mild to moderate limitations in the relevant functional domains but not marked limitations in two, or extreme limitations in one of them. (*See* A.R. 72, 263-66, 316-17, 322, 465-68.)  As such, the ALJ found Plaintiff's impairments did not meet the Listings.  Next, the ALJ's discounting of NP Behrouzi's medical opinion was appropriate given that the medical source statement she provided was dated May 8, 2017 and indicated she began treating Plaintiff in May 2017.  As such, NP Behrouzi's treatment of Plaintiff was extremely limited and only included approximately one week of treatment when she opined that he had significant limitations.  *See* 20 C.F.R. § 404.1520(c)(3)(i) ("The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment").  Furthermore, NP Behrouzi's opinion was also not consistent with the findings of Drs. Sebold and Harding and the notes of NP Williams which did not indicate marked limitations.  *See Tami Ann A. v. Comm'r of Soc. Sec.*, 2022 WL 938167,

at \*3, 5 (S.D.N.Y. Feb. 3, 2022), *report and recommendation adopted sub nom*, *Albanese v. Comm'r of Soc. Sec* 2022 WL 929837 (S.D.N.Y. Mar. 29, 2022) (finding that the ALJ reasonably concluded the physician's assessment to be inconsistent with other medical opinion and evidence and "[c]onsistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources.") (internal quotation and citation omitted).  Thus, as substantial evidence supports ALJ McKenna's findings as to Plaintiff's mental impairments, the Court finds no error.

As the Court finds that remand is warranted to determine the severity of Plaintiff's diabetes and reassess his RFC, to the extent the ALJ must further develop the record to assess the limitations identified above, he should do so.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, and Defendant's motion for judgment on the pleadings is DENIED.  The case is remanded to the Commissioner for further proceedings consistent with this opinion.

        **SO ORDERED.**

Dated: April 25, 2022
        New York, New York

*Katharine H. Parker*

        KATHARINE H. PARKER
        United States Magistrate Judge